## RIVERS vs. THOMPSON.

43  633
124  523

[REAL ACTION IN THE NATURE OF EJECTMENT.]

1. *Adverse possession; definition of.*—Adverse possession is that kind of continued occupation and enjoyment of real estate, which indicates an assertion of right on the part of the person maintaining it.

2. *Same; jury, province of.*—It is the province of the jury to determine the facts which constitute adverse possession, under appropriate instructions from the court.

3. *Probate court; decree of, to sell lands, when cannot be collaterally assailed.*—The orders, or decrees, of the probate court, respecting the sale of the real estate of a decedent, cannot be collaterally assailed when its jurisdiction is shown to have attached.

4. *Tax sale of lands in 1854; when invalid.*—A sale of land for taxes in 1854 is invalid, if it is not shown that the assessor complied with the provisions of § 428 of the Code of 1852, in giving notice of his attendance in each precinct, to assess the taxes.

APPEAL from the Circuit Court of Barbour.

Tried before Hon. H. D. CLAYTON.

THE material facts of the case will be found in the opinion. The following is all the testimony in relation to the assessment of taxes, for non-payment of which the lands in controversy were sold : " The defendant introduced as evidence on the trial, the original book of assessments of lands for taxes in Barbour county, Alabama, for the year 1853, in the handwriting of J. H. Danforth, filed in the office of the probate judge of said county, in which the lands in controversy are duly assessed to ' owner unknown,' and the amount of taxes therein for the year 1853

at $10.98. It was proved that J. H. Danforth was the assessor of taxes for the year 1853 for said county; that he did assess the taxes in said county for the year 1853; that said book of assessment was in his handwriting, and that said Danforth was dead." There was some other testimony set out in the bill of exceptions in relation to sale, &c., which is not material to be set out.

The application to the probate court, and the order for the sale of the lands, are both silent as to the *terms* of the sale. The order confirming the sale shows that it was made for cash, and the purchase-money paid.

The court, at the request of the plaintiffs, charged the jury that " if they believed the evidence, they must find for the plaintiff the lands sued for," and defendant excepted, &c.

The charge of the court is now assigned as error.

RICE, SEMPLE & GOLDTHWAITE, for appellant.—1. In a real action, under the Code of 1853, the plaintiff cannot recover, unless, at the commencement of the action, he had a legal right, as distinguished from an equitable right, and the right of possession.— *Williams v. Hartshorn*, 30 Ala. 211 ; *You v. Flinn*, 34 Ala. 409.

2. A sale of land by an administrator, under an order of the probate court which is entirely silent as to the terms of sale, is a nullity. It is essential to the validity of such sale that an order, or decree, authorizing it and fixing its terms should precede it; a confirmation cannot give validity to a sale not authorized by any order or decree.—*Minnesota Co. v. St. Paul Co.*, 2 Wallace's Rep. 640.

3. Such sale, though not void, and though not confirmed, confers no legal title upon the purchaser until the court orders a conveyance to be made to him, and the conveyance is actually made under such order ; and the doctrine of relation cannot apply in any such case, so far as the legal title is concerned. The legal title in such purchaser takes origin and date only from the execution of the conveyance.—Code, § 1770.

4. A conveyance of land by one against whom the land

Rivers v. Thompson.

conveyed was held adversely by claim of title, is void.—
*Dexter v. Nelson*, 6 Ala. 69.

And even if this rule does not apply to conveyances by
sheriffs or administrators, it certainly applies to convey-
ances by their grantees, and also to conveyances by the
heirs of an intestate; and its application, in this case, is
fatal to the appellee.

5. The possession of appellant for himself and Welborn,
under the tax title, was older than the possession of the
plaintiff, and older than the conveyance respectively to the
plaintiff, and, beyond all doubt, was adverse to the plaintiff
and to his grantors. It was a possession taken and held
under the tax title, and under claim of title, and under a
claim honestly believed to be good against the world.
This possession of appellant commenced in January, 1857,
and there is no pretence that it ever ceased before the
commencement of this suit. It is only upon the ground
that appellant held possession, that appellee could main-
tain such an action as this, which does not lie against one
out of possession.

If appellee says appellant was out of possession when
sued, this of itself defeats the suit. If appellant was in
possession when sued, as the plaintiff admits by the suit
itself, then, as the possession of appellant was proved to
have been commenced in January, 1857, the presumption
is that he was in possession during the whole intermediate
period.— *Garner v. Green*, 8 Ala., and cases therein cited.

6. The question of adverse possession is a question for
the jury. The charge of the court invaded the province of
the jury by taking this question from them.

7. It may be conceded that when one enters upon land
under a claim or instrument, which does not give any defi-
nite or certain boundaries, the possession of part is not
possession of the whole; but "when one enters upon land
under a deed giving definite and certain boundaries, the
possession of any part is a possession of the whole, though
the deed be not recorded."— Hilliard on Remedies for Torts,
p. 115, § 38; *Spaulding v. Warren*, 25 Vermont, 316; *Baird
v. Bell*, Duval's (Ky.) Reports, 384; *Prop'rs Ky. Purchase*

*v. Laboree*, Greenleaf's Rep. 275, and the authorities cited in this last mentioned case.

8. Independent of the foregoing grounds, the right of appellant to a verdict was clear, because the tax title is a perfect one.

The only objection made to its validity is that there is no positive evidence that the assessor complied with the provisions of section 428 of the Code.

The provisions of that section are obviously "ministerial or directory, and not vital or absolutely essential" to the validity of the assessment, or tax; especially as to non-resident unknown owners. Their evident and sole purpose was the personal convenience of the residents of the respective beats. They must be construed reasonably and limited to the purpose for which they were plainly designed. It cannot be a just construction, that the mere omission to comply with them, in any county, in any particular year, renders void every assessment of taxes in that county in that year. If so, then the mere like omission in every county, in any year, dries up, for that year, the State and county treasuries, and stops the wheels of the county and State governments.—*Dow v. Smith*, 6 Vermont Reports, 519.

What sense or reason is there in non-resident unknown owners making complaint that the assessor did not attend or give notice, in the respective beats? Why should even a resident be permitted to avoid the payment of his taxes, merely because the assessor did not attend, or give notice, in his beat? The validity or invalidity of an assessment, or tax, cannot depend upon any compliance, or non-compliance with the provisions of § 428 of the Code. The other provisions of the tax law clearly prove this. No action is provided for, or contemplated, as founded upon § 428; but action is provided for and contemplated as founded upon other sections—the fundamental, vital, imperative sections, such as §§ 425, 426, 427.—See 24 U. S. Dig. p. 602, §§ 125, 130 ; 15 Iowa Rep. 530 ; 24 Illinois Rep. 105, 108.

The book of assessments, filed with the probate judge, is in the nature of a judgment, which, or a copy of which,

gives the collector the power to levy and sell, like an execution does for a sheriff. This provision as to attendance of assessor in the beats, is a thing behind the judgment— behind the book of assessments; and if the attendance is omitted, and the assessment and book of assessment is right in every other respect, this mere omission is not sufficient to invalidate the assessment and book of assessments. This is not inconsistent with any of our decisions, and is a most reasonable and just construction; it is the only reasonable or practicable construction.

But if compliance with § 428 is essential, then as the assessor is dead, and his book of assessments was duly filed with the probate judge, and nothing is proved showing any omission of duty by him, the courts must presume that he did his duty under that section. That would be but a just application, as to a public and sworn officer, of the maxim, "*Rite esse acta, omnia præsumuntur.*—*Davis v. The State*, 17 Ala. 415, (where this court presumed the magistrate had done his duty in reducing the testimony to writing and on that presumption held, the court below erred in admitting evidence, without producing the writing or accounting for its non-production.—9 Foster's Rep. 199 ; 2 Ohio State Rep. 241 ; 12 Wheaton's Rep. 70.

A collector *de facto* may make a sale, as well as a collector *de jure.*—24 U. S. Dig., p. 602, § 126.

The charge of the court declared the appellee entitled to recover all the land sued for. It is certain he was not entitled to recover all, even if entitled to recover any part; for one of the heirs of Shorter (Virginia A. Oliver) never conveyed to appellee.

It is a settled rule, that in the absence of evidence to the contrary, the presumption is that public officers have done their duty. This rule ought to apply to a tax assessor, as to the beat notices.

The charge should have been, that if the evidence was believed, the verdict must be for the defendant (the appellant).

The action was commenced 24th September, 1858. The conveyance by Scott's administrator to Robinson was not executed until 2d June, 1859. Virginia A. Oliver, one of

Shorter's heirs, never conveyed to plaintiff, or to any other person.

The appellee was plaintiff below, and claimed title to the land sued for under a patent, 9th March, 1858, to Eli S. Shorter and John S. Scott, and certain proceedings in the probate court of Russell county, and deeds thereunder by the administrator of said Scott, and the purchaser from said administrator, and a deed by all the heirs of said Shorter, except Virginia A. Oliver, (a married daughter of said Scott).

The defendant claimed the land under a tax title, and also claimed that the conveyances to said plaintiff are severally void, by reason of defendant's adverse possession of the lands when each of said deeds was executed. The defendant also insists that the charge of the court is erroneous in authorizing plaintiff to recover all the land sued for, when, it is clear, even if he can recover any, he cannot recover all of it. (For instance, one of the heirs of patentee never conveyed to plaintiff.)

The defendant also insists that the proceedings in the probate court of Russell did not divest the title out of Scott's estate, or heirs.

The defendant further insists that, if plaintiff had title, he acquired it after this suit was begun,—at least to part of the land.—See *Hartshorn v. Williams*, 30 Ala. A plaintiff cannot recover on a right which he did not have at the commencement of his suit.—*Hill v. Hill*, 10 Ala. 527.

The tax title of defendant is good. The only defect alleged in it is the omission to prove, by positive evidence, compliance by assessor with section 428 of the Code, which is directory merely and not essential to the validity of the tax.

Tax assessments ought not to be held invalid, because the public officers have not strictly followed the provisions of law, which are merely directory—especially where the tax laws have made provision for the correction of errors on the part of assessors.—*Oneal v. Va. & Md. Bridge Co.*, 18 Maryland, R. 1.

The provision as to attendance of assessors in beats, &c., in section 428 of the Code, is merely directory.—22 U. S.

Dig. 533, §§ 61, 62 ; *Adams v. Town of Seymour*, 30 Connecticut R. 402 ; *Cowall v. Dorb*, 12 Cal. R. 273 ; *Scammon v. Scammon*, 8 Foster's R. 419.

The assessment list is not a record. The grand list, called in the statute, the book of assessments, is " the only record of the doings of the assessors ; and this is not perfected until" examined and corrected under sections 440 and 441 of the Code.—See also, section 442 ; *Goddard v. Town of Seymour*, 30 Connecticut R. 394 ; *Wheeler v. Chicago*, 24 Illinois R. 105, 108.

In the absence of proof to the contrary, it will be presumed that the assessor and other sworn public officers have obeyed every direction of the law.—22 U. S. Dig. 533, § 62 ; *Ives v. Lynn*, 7 Conn. R. 505 ; *Ward v. Barrows*, 2 Ohio State R. 241 ; *Bank U. S. v. Dandridge*, 12 Wheaton, 70 ; *Gordon v. Norris*, 9 Foster's R. 199 ; *Torrey v. Milbury*, 21 Pick. R. 67 ; *Davis v. The State*, 17 Ala. 415.

The record of the assessment of a tax, (that is, the book of assessments,) when examined and corrected under sections 440, 441 and 442 of the Code, is not merely record evidence of the assessment, " it is the assessment itself." *Perkins v. Langmaid*, 36 New Hamp. R. 502, 507 ; *Wheeler v. City of Chicago*, 24 Illinois R. 105.

In the case of an unknown owner of land, " the land is to be assessed, " and there is no personal liability for the tax. *N. Y. & H. R. R. Co. v. Lyon*, 16 Barbour R. 651 ; 22 U. S. Dig. 534, § 95, referring to 42 N. H. R. 282.

Hence, it is manifest, section 428 of the Code has no application as to a tax on land—the owner being unknown, and consequently not liable for the tax, otherwise than by the land itself.—See authorities cited in the note on pages 521, 522 of Cooley on Constitutional Limitations.

In that note, (Cooley on Const. Lim. 521, 522), the writer states, in substance, that if the provision of the tax statute be such, that " to the tax payer it is immaterial whether it was complied with or not, a failure to comply ought not to be regarded as a foundation for complaint."

In the same note, the writer justly observes, that Blackwell, in his treatise on tax titles, shows " a perceptible lean-

ing against that species of conveyance."    Courts of justice can not indulge in such "leaning."

J. L. PUGH, for appellee.—The land sued for was patented to Shorter & Scott. Shorter died, and his heirs-at-law conveyed to the plaintiff. Scott died, and his administrator sold and conveyed to Robinson, under order of probate court. Robinson conveyed to Shorter's heirs-at-law, thus vesting in them the entire estate.

Iverson's deed, as administrator of Scott to Robinson, relates back to time of sale, and vests the title in Robinson at that time.—8 North Carolina, (Iredell,) 505.

The tax sale passed no title to Wellborn, appellant's vendor.—5 Ala. 433 ; 11 Ala. 295, and authorities cited.

There was no proof that the assessor complied with the requirements of section 428 of the Code.

B. F. SAFFOLD, J.—This is an action of ejectment under the Code, by the appellee against the appellant. The issue is joined on the plea of the general issue. The plaintiff's title to the land is derived as follows : A patent from the United States to Eli S. Shorter and John S. Scott. The petition of Iverson, as administrator of Scott, to sell his undivided half interest, filed January 31st, 1853. The order of the court for the sale, April 18th, 1853. The report of the sale to Alex. J. Robinson, and his payment of the purchase-money, July 25th, 1853. The confirmation of the sale, May 9th, 1859. The deed from Iverson, as administrator, to Robinson, June 2d, 1859. A deed from Robinson and wife to the heirs-at-law of Eli S. Shorter, made April 11th, 1857. Another deed from Robinson and wife to the heirs-at-law of Shorter, by name, dated June 11th, 1857. A deed from R. C. Shorter and wife, John A. Urquhart and wife, and J. B. Oliver for himself, and as trustee of his wife Virginia, to the plaintiff, dated June 3d, 1857. The testimony of J. G. Shorter, that the grantors of the last mentioned deed were the heirs-at-law of Eli S. Shorter.

The title of the defendant is derived from a deed to him, made by M. B. Wellborn, December 11th, 1856, for one

undivided half of the premises, Wellborn having purchased at a tax sale in April, 1854.

It is insisted on the part of the defendant, that the deed from the heirs-at-law of Shorter to the plaintiff was made during his adverse possession of the premises, and is on that account void. A tax collector's deed is color of title, and possession taken and held under it is adverse possession.—*Dillingham v. Brown*, 38 Ala. 311. A conveyance of land, by one against whom the land conveyed was held adversely by claim of title is void.—*Dexter and Allen v. Nelson*, 6 Ala. 68. The conveyance to the plaintiff was in June, 1857. The defendant testified, that in January, 1857, he leased forty acres of the land to a person who cut some logs to build a house, and that he himself cut some timber and hauled it off. He also states, generally, that he took possession in January, 1857.

Adverse possession is that kind of continued occupation and enjoyment of real estate which indicates an assertion of right on the part of the person maintaining it.—Webster's Unabridged Dictionary. It is a question of fact, and the weight of circumstances tending to establish it, must be determined by the jury, under appropriate instructions from the court.—*Benje v. Creagh's Adm'r*, 21 Ala. 151. It was the province of the jury to find whether the acts of the defendant, which were testified to, constituted such a *possessio pedis*, and assertion of right, as amounted to adverse possession. The testimony on that point was not of such conclusive character as to justify the charge given by the court.

The sale of Scott's interest in the land by his administrator can not be collaterally impeached after the jurisdiction of the probate court had attached.—*King v. Kent's Heirs*, 29 Ala. 542. The conveyance of J. Berrien Oliver, for himself, and as trustee of his wife, she having died subsequently, and he being entitled to a life estate, would give to the plaintiff a right to recover his interest in her estate in the premises. The sale of the land to Wellborn by the tax collector in 1854, is void, unless it can be shown that the provisions of section 428, old Code, were complied with.

41

*Lyon et al. v. Hunt et al.*, 11 Ala. 295 ; *Pope and Hamner v. Headen*, 5 Ala. 433. It is not the policy of the law to deprive the citizen of his property by sales made on account of the government, through its officers, who have no interest in the matter, without putting him wholly in fault in not complying with his obligations.

For the error in the charge of the court, the judgment is reversed and the cause remanded.